STATE of North Dakota, Plaintiff and Appellee,

v.

**Rodney Marvin BEILKE, Defendant and Appellant.**

**Cr. No. 910408.**

Supreme Court of North Dakota.

Aug. 19, 1992.

---

Mark R. Fraase of Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, for defendant and appellant.

Robin Huseby, State's Atty., Valley City, for plaintiff and appellee.

LEVINE, Justice.

Rodney M. Beilke appeals from a county court order denying his motion to suppress evidence obtained after he was arrested by a police officer outside the officer's municipal jurisdiction. We affirm.

On July 21, 1991, as Beilke was traveling east on Interstate Highway 94 (I–94), a trucker alerted the Valley City police dispatcher of a possibly drunk driver near Valley City on I–94. The police dispatcher radioed Valley City Police Officer Jonathan Cave that neither the Barnes County Sheriff's Department nor the State Highway Patrol was able to investigate. Neither agency had requested Cave's assistance but Cave had been appointed by the Barnes County Sheriff as a permanent special deputy pursuant to NDCC § 11–15–02, *infra.* Cave told the police dispatcher that he would intercept the vehicle.

Approximately six miles east of Valley City, Cave observed Beilke's vehicle weaving. Cave activated his lights and siren and stopped the vehicle. He then had Beilke perform field sobriety tests and arrested him. Beilke later submitted to a blood-alcohol test and was charged with driving under the influence.

Beilke moved to suppress all evidence obtained after his arrest, including field sobriety test results, blood-alcohol test results and verbal statements, asserting that the arrest was illegal because Cave's permanent appointment as a special deputy violated NDCC §§ 40–20–05 and 44–08–20. The county court denied the motion, concluding that Cave was illegally cross-deputized but that he made a valid citizen's arrest of Beilke. Beilke entered into a conditional plea agreement under N.D.R.Crim.P. 11 and then appealed, questioning the validity of the citizen's arrest. We requested supplemental argument on the issue of the legality of Cave's cross-deputization.

On appeal, Beilke argues that NDCC § 11–15–02 does not bestow upon a municipal police officer permanent county-wide jurisdiction. Instead, Beilke argues, NDCC § 11–15–02 only authorizes a sheriff to appoint temporary special deputies for "special occasions or emergency situations while the sheriff is present." The State counters that NDCC § 11–15–02 authorizes a county sheriff to appoint municipal police officers on a permanent basis to serve anywhere within the county, whenever the sheriff or a regular deputy is unavailable or unable to handle a specific situation.

NDCC § 11–15–02 says:

"The sheriff may appoint and qualify special deputies in such numbers as are required by the conditions. Each special deputy shall receive compensation for services rendered and the same mileage allowance as regular deputies, which must be paid by the county within the limits of funds budgeted for such purpose. The sheriff shall have the sole power of appointing special deputies and may remove them at pleasure."

Beilke contends that NDCC § 11–15–02 is ambiguous because it does not define "special deputy" or describe a special deputy's duties and jurisdiction. The State argues that NDCC § 11–15–02 is unambiguous in that it authorizes a sheriff to appoint a municipal police officer as a perma-

nent special deputy sheriff "as ... required by the conditions."

The interpretation of a statute is a question of law fully reviewable by this court. *Kim–Go v. J.P. Furlong Enterprises, Inc.*, 460 N.W.2d 694 (N.D.1990). When a statute's language is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit, as legislative intent is presumed clear from the face of the statute. NDCC § 1–02–05; *Flermoen v. Workers' Compensation Bureau*, 470 N.W.2d 220 (N.D.1991); *Haider v. Montgomery*, 423 N.W.2d 494 (N.D.1988).

In interpreting a statute, we give words their plain, ordinary and commonly understood meaning. NDCC § 1–02–02; *State v. Hersch*, 445 N.W.2d 626 (N.D. 1989). We consider the ordinary sense of statutory words, the context in which they were enacted, and the purpose which prompted the enactment. *Coldwell Banker v. Meide & Son, Inc.*, 422 N.W.2d 375 (N.D.1988).

"Special" is defined as "not general or regular; specific or limited" and "confined to a particular purpose." *Webster's New World Dictionary of the English Language*, 1366 (2nd College Ed.1980); *Black's Law Dictionary* 1397 (Rev. 6th ed. 1990). "Deputy" is defined as "a person appointed to act as a substitute for, or as an assistant to another." *Webster* at 380. *See Bailey v. Clausen*, 192 Colo. 297, 557 P.2d 1207 (1976); *Evans v. Hardcastle*, 339 So.2d 1150 (Fla.App.1976). Thus, a special deputy is one who is appointed by the sheriff to exercise special functions for the purpose of either assisting the sheriff or other deputies when they are in need, or acting in their place when they are unavailable. We conclude that the permanent appointment of a municipal police officer as a "special deputy" to act in a "specific or limited situation," when a sheriff or regular deputy requires assistance, is consonant with the plain, ordinary and commonly understood meaning of the words "special" and "deputy." It is also compatible with the purpose of the statute to provide aid to the sheriff under appropriate circumstances.

Beilke reads NDCC § 11–15–02 to limit a sheriff's power to appoint special deputies to cases involving "special occasions or emergency situations while the sheriff is present." But, there is no such restriction in the statute. Instead, the statute clearly says that a sheriff may "appoint and qualify special deputies in such numbers as are required by the conditions." The "conditions" that justify and authorize the appointment of a special deputy would include the circumstance that it may be difficult or impossible for a sheriff to perform all of the duties of his or her office in person at all times and in all places. Indeed, in 1983, section 11–15–02 was amended to delete the language that authorized the appointment of special deputies only "[i]n case of any emergency." 1983 S.L., ch. 151, § 1.[1] When the legislature amends an existing statute, it indicates its intent to change the statute's meaning in accord with its new terms. *E.g., Bostow v. Lundell Mfg. Co.*, 376 N.W.2d 20 (N.D.1985); *Linington v. McLean County*, 161 N.W.2d 487 (N.D.1968). The legislature is presumed to act with purpose and not perform useless acts. *State Bank of Towner v. Edwards*, 484 N.W.2d 281 (N.D.1992). Consequently, the deletion of the words "[i]n case of any emergency" indicates an intent to broaden, not restrict, the circumstances under which a sheriff may appoint special deputies. We conclude that the statute unambiguously authorizes a sheriff, "as ... required by the conditions", to

---

1. NDCC § 11–15–02, as amended in 1983, says: In case of any emergency, the The sheriff may appoint and qualify special deputies in such numbers as his judgment as required by the conditions. Each special deputy shall receive compensation for his services rendered and the same mileage allowance as is allowed to regular deputies, such amounts to which must be paid by the county within the limits of funds budgeted for such purpose. The sheriff shall have the sole power of appointing such special deputies and may remove them at pleasure. S.L.1983, H.B. 1649, ch. 151 § 1. (Overstrike indicates deletion, underscore indicates addition to statute.)

appoint municipal police officers as permanent special deputies.

Beilke argues that reading NDCC § 11-15-02 to authorize the appointment of municipal police officers as permanent special deputies creates a conflict with NDCC § 44-08-20(3).[2] Section 44-08-20(3) allows a law enforcement officer from one jurisdiction to respond to a request for assistance from a law enforcement officer of another jurisdiction, so long as it is "a request for assistance as to a particular and singular violation of law and does not constitute a request for assistance outside the purview of the jurisdiction of the law enforcement agency by which a peace officer is employed."

■ We construe statutes to harmonize them and avoid conflicts. *Ebach v. Ralston*, 469 N.W.2d 801 (N.D.1991). In order for a conflict to exist between NDCC §§ 11-15-02 and 44-08-20(3), all municipal police officers would have to be cross-deputized as special deputies. But a sheriff may appoint as many municipal police officers "as are required by the conditions." Thus, the sheriff may choose to appoint many police officers or none at all. The fact that a sheriff chooses not to deputize a police officer would not prevent the sheriff from requesting assistance from that officer in a particular instance. That is what section 44-08-20(3) is designed for. Furthermore, NDCC § 44-08-20(4) provides that the authorization to request assistance is "supplemental to other powers and duties conferred upon peace officers." Nowhere does NDCC § 44-08-20 indicate it is either exclusive or a limitation of a sheriff's authority to appoint special deputies pursuant to NDCC § 11-15-02.

■ Finally, Beilke argues that our interpretation nullifies NDCC § 40-20-05(2).[3] That statute limits the territorial jurisdiction of municipal police officers to city limits and a perimeter of one and one-half miles outside city limits. The subject of the statute is the authority of municipal police officers, not their cross-deputization. Explaining the relationship of NDCC § 40-20-05(2) and cross-deputization, the Attorney General said:

"Beyond the one and one-half mile limitation, a city police officer has no law enforcement authority to enforce either state law or municipal ordinance, *absent some other special law enforcement status that may be granted to such officer, such as special deputy sheriff status.*"

N.D.Op. Att'y Gen. 17, p. 20 (1977) (emphasis added).

We give respectful attention to an opinion of the Attorney General and follow it when it is persuasive. *Holmgren v. North Dakota Workers' Comp. Bur.*, 455 N.W.2d 200 (N.D.1990). Here, we are persuaded that the opinion accurately assesses the impact of NDCC § 11-15-02 upon NDCC § 40-20-05.

■ In this case, Cave was granted special deputy status. The statutes under consideration recognize that a sheriff and his or her few regular deputies cannot always provide adequate law enforcement services in large and sparsely populated rural coun-

---

**2.** NDCC § 44-08-20 says, in part:

Peace officers employed by a law enforcement agency within the state shall have the power of a peace officer in the following circumstances:

. . . . .

3. When responding to requests from other law enforcement agencies or officers for aid and assistance. For the purposes of this subsection, such a request from a law enforcement agency or officer means only a request for assistance as to a particular and singular violation or suspicion of violation of law, and does not constitute a continuous request for assistance outside the purview of the jurisdiction of the law enforcement agency by which a peace officer is employed.

**4.** The powers and duties hereby conferred are supplemental to other powers and duties conferred upon peace officers and do not constitute an obligation beyond the regular course of duty of those officers.

**3.** NDCC § 40-20-05(2) says:

2. A police officer in "hot pursuit" may continue beyond the one and one-half mile [2.41 kilometers] limit to make an arrest, in obedience to a warrant or without a warrant under the conditions of section 20-06-15, whenever obtaining the aid of peace officers having jurisdiction beyond that limit would cause a delay permitting escape. As used in this subsection, "hot pursuit" means the immediate pursuit of a person who is endeavoring to a avoid arrest.

ties unless municipal police officers, by their appointment as permanent special deputies, are able to assist and provide services to the areas which surround their communities. In such circumstances, a sheriff could reasonably determine that the appointment of a municipal police officer as a permanent special deputy, to serve when the sheriff or regular deputies are unavailable or understaffed, is "required by the conditions." Giving effect to the ordinary meaning of the language of NDCC § 11–15–02 and giving respect to its purpose and the purpose of NDCC § 44–08–20 to permit neighboring law enforcement agencies to assist one another in times of need, we conclude that NDCC § 11–15–02 authorizes the appointment of municipal police officers as permanent special deputies. Consequently, Cave's appointment as a special deputy is valid, as are his stop and arrest of Beilke.

 Although the trial court's reason for denying Beilke's motion to suppress is incorrect, the denial itself is proper. We will substitute the appropriate rationale for a correct decision if the results are the same under either rationale. *See First Nat'l Bank of Belfield v. Burich,* 367 N.W.2d 148 (N.D.1985).

Accordingly, we affirm the order denying the motion to suppress evidence and the resulting criminal conviction.

ERICKSTAD, C.J., and VANDE WALLE, JOHNSON and MESCHKE, JJ., concur.